Below is the Order of the Court.

*Paul B. Snyder*
_____
**Paul B. Snyder**
**U.S. Bankruptcy Judge**
**(Dated as of Entered on Docket date above)**

1

2

3

4

5

6

7

8

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| BARRETT PARKS,<br><br>Debtor. | Case No. 12-44011 |
| SHERRON ASSOCIATES LOAN FUND XXI (Lacey) L.L.C.,<br><br>Plaintiff,<br><br>v.<br><br>MARGARET THOMAS, a single person; MICHAEL G. WEINAND and VERONICA J. WEINAND, husband and wife; PHILIP K. VALDENS and KATHY VALDENS, husband and wife; PENSER NORTH AMERICA, INC., a Washington Corporation,<br><br>Defendants. | Adversary No. 13-04026<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

This matter came before the Court on October 24, 2013, on cross motions for summary judgment filed by plaintiff Sherron Associates Loan Fund XXI (Lacey) L.L.C. (Sherron Associates) and defendant Margaret Thomas (Thomas). At the conclusion of the hearing, the Court took the matter under advisement. Based on the arguments and pleadings presented, the order of the Court is as follows:

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 1

The basic facts are not in dispute. Barrett Parks (Debtor) and Michael Weinand (Weinand) were members of South Sound Property Development, L.L.C., (South Sound Property), which was engaged in the construction and development of an office building on Woodland Square Loop located in Lacey, Washington. Weinand held 67% of the interests in South Sound Property. The Debtor held 33% of the interests.[1]

In 2007, to commence its office building project, South Sound Property initially obtained financing in two ways: a $693,000 loan from Sherron Associates, and a loan from Cascade Bank for over $12 million. As part of the collateral for the Cascade Bank loan, Weinand convinced his sister Margaret Thomas to pledge a one million dollar investment account that she had with Weinand (who was also a financial advisor).

The project initially ran into cost overruns and other problems. South Sound Property defaulted on the loan from Cascade Bank. After pressure from Cascade Bank to secure alternate financing, Weinand withdrew $609,144 of the funds in Thomas's investment account that had been pledged as collateral for use on the project and deposited them in South Sound Property's account at Cascade Bank. South Sound Property was also in default on its loan from Sherron Associates. After Cascade Bank commenced foreclosure and receivership proceedings in state court, South Sound Property filed for chapter 11 bankruptcy on May 21, 2009. See In re South Sound Property Development, L.L.C., Case No. 09-43633 (Bankr. W.D. Wash. filed May 21, 2009).

South Sound Property's bankruptcy schedules listed both Thomas and Sherron Associates as creditors, with Sherron Associates owed a secured debt of $693,000 and Thomas owed an unsecured debt of $609,644. From the beginning of the bankruptcy, South Sound Property faced strong opposition from Cascade Bank. Several motions were filed in opposition to the reorganization, starting with the initial request to use cash collateral (Thomas's pledged funds were in the Cascade bank

---

[1] According to the Washington Secretary of State's website, South Sound Property became inactive in late 2012, after the filing of the Debtor's bankruptcy. The Debtor did not schedule his membership interests in his bankruptcy petition, and the current status of ownership is unclear.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 2

account), and Cascade Bank filed an early motion to dismiss the bankruptcy on the grounds South Sound Property would be unable to reorganize. An order granting Cascade Bank relief from stay was eventually entered in South Sound Property's bankruptcy in June 2010 after South Sound Property had been unable to obtain alternative financing. In September 2010, Cascade Bank, South Sound Property and Thomas reached an agreement as to the disposition of the remaining funds held in South Sound Property's bank account at Cascade, specifically, the funds that had come from Thomas's pledged investment account. The Court had already authorized South Sound Property to use a portion of the funds for expenses during the bankruptcy; of the approximately $421,000 remaining, a portion was allowed to pay attorney fees, $100,000 was refunded to Thomas, and Cascade Bank was allowed to realize upon the rest. Under the settlement, Thomas was released from any further liability by Cascade Bank, freeing her from her pledge to provide up to one million dollars in collateral. As part of the settlement, South Sound Property also agreed to dismiss its bankruptcy and allow a receivership to go forward. After the bankruptcy was dismissed on September 30, 2010, a receiver was appointed in state court that eventually wound down South Sound Property's business. The underlying property was subsequently sold by Cascade Bank in a Trustee's sale held in January 2011, and the state court action was closed after the receiver filed a final report in April 2011.

In the interim, apparently recognizing that recovery from South Sound Property was unlikely given the pending bankruptcy, Sherron Associates commenced a lawsuit against South Sound Property's principals and the guarantors of their loan—Weinand, the Debtor, and their respective spouses—in state court in September 2009. The record does not contain detailed information as to this lawsuit, other than a judgment was entered in Sherron Associates' favor[2] against Weinand and his spouse and the Debtor and his spouse in February 2010 in the total amount of $798,919.50.[3] According to Sherron Associates' proof of claim filed in the Debtor's case, Sherron Associates has

---

[2] The judgment is captioned "Judgment Summary and Order on Motion for Summary Judgment" so it was presumably entered after some court resolution of contested matters and is not a default judgment.
[3] This is comprised of a principal amount of $693,000, plus $69,616 in interest to date, $14,408 in attorney fees, and $2,352.06 in costs. The judgment earns interest at 12% per annum.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 3

received payments from the Debtor towards the judgment (last one in May 2012) of $117,155.01, all applied to interest, and the total judgment due as of October 2012 was $887,290.

After the Sherron Associates' judgment was entered (and within a week of the foreclosure and sale of the South Sound Property office building), Weinand and his wife filed their personal chapter 7 bankruptcy on January 11, 2011. See In re Michael and Veronica Weinand, Case No. 11-40190 (Bankr. W.D. Wash.). Weinand scheduled Thomas and Sherron Associates as unsecured creditors, owing Thomas over $1.2 million and Sherron Associates $798,000 based on the judgment. Weinand scheduled his membership interest in South Sound Property; no action was taken as to the interests during the bankruptcy, and the interests were abandoned back to Weinand in February 2011 when the chapter 7 trustee filed his final report. Neither Thomas nor Sherron Associates appeared or participated in Weinand's bankruptcy, and the Weinands received a discharge on April 20, 2011.

With South Sound Property not available for recovery and Weinand discharged on the debt, Thomas commenced a state court action in May 2011 against the Debtor based on his personal guarantee to Thomas. Thomas's husband, Jeff Thomas, appears to have managed the state court litigation, and the Thomases calculated that they were owed over $1.4 million on the funds she had pledged to South Sound Property, based on 5% interest being applied to the entire $1 million pledged from the date of their September 2007 agreement to pledge the funds, and 20% interest applied to the $609,460 in funds that were actually withdrawn.[4] The Thomases' calculation of damages notes only one payment on the debt of $100,000 in October 2010.

The settlement of the Thomas v. Parks lawsuit that is the subject of this action was executed in October 2011, and the overall resolution was that the Debtor settled with Thomas for $600,000 to resolve the claims in Thomas's lawsuit (Settlement Agreement). The Debtor was to pay Thomas $155,000 upon the execution of the Settlement Agreement, with monthly payments of $5,000 per month thereafter for the first 36 months and then equal monthly installment payments of the remaining

---

[4] It is unclear whether the remaining $390,540 of the $1 million pledged was ever taken from Thomas's account and placed in a separate account.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 4

balance over the next 36 months. Further, to secure payment of the Settlement Agreement, the Debtor's obligations were secured by his stock of Penser North America, Inc. (Penser), in which he was the majority owner. As part of the agreement, several of the Debtor's shares were sold to co-owner Phillip Valdens (Valdens) so that the Debtor now holds 49 shares and Valdens holds 51 shares, with two of Valdens's shares securing the Debtor's settlement payments to Thomas. The settlement was also guaranteed by Penser, and Valdens had the right to buy Thomas out of the Settlement Agreement in the event the Debtor defaulted on payment.[5]

Sherron Associates contends that Thomas is an insider to the Debtor, and that the payments and security interest made under the Settlement Agreement to Thomas are recoverable as preference payments under 11 U.S.C. § 547(b)[6] and avoidable as fraudulent transfers under § 544 and RCW 19.40.051(b). Sherron Associates also contends that Thomas's claim should be equitably subordinated. Sherron Associates was authorized by this Court to bring these claims, as well as others, derivatively on behalf of the Debtor. See In re Barrett Parks, Case No. 12-44011, ECF No. 98 (Order to Allow Sherron Associates to File Adversary Proceeding).

Sherron Associates alleges that the Thomases discussed this lawsuit with Weinand and used inside information from Weinand in prosecuting the action. While Jeff Thomas testified that he had intermittent discussions with Weinand about the South Sound Property project, the conversations were of a general nature, and both the Thomases and their state court counsel Patrick Moran testified that they conducted the lawsuit against the Debtor independently and negotiated it themselves with the Debtor's counsel.

---

[5] Valdens bought the two Penser shares from the Debtor for $110,000, which the Debtor apparently used to fund the $155,000 down payment on the settlement. Sherron Associates has challenged this valuation for the Penser stock and has alleged these transfers and exchanges between the Debtor, Valdens and Penser are also avoidable in the Complaint for this adversary. These claims are not the subject of the current cross-motions for summary judgment, and on November 19, 2013, the Court granted Sherron Associates' motion to dismiss Phillip Valdens from this action.

[6] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 5

The Debtor made the $155,000 initial down payment to Thomas, and made $5,000 monthly payments from November 2011 until he filed for bankruptcy on June 7, 2012, an additional eight payments or $40,000. Since this bankruptcy commenced, the Debtor was to make $5,000 in monthly payments into his attorney's trust account in relation to this debt.

Sherron Associates seeks to recover the $195,000 in payments made to Thomas under the Settlement Agreement, to avoid the security interest and guarantee supporting the Settlement Agreement, and to recover the funds allegedly held in trust by the Debtor's attorney. There is no dispute that only three $5,000 payments, or $15,000, were transferred to Thomas in the 90 days prior to the Debtor's bankruptcy filing. Therefore, Sherron Associates must establish that Thomas is an "insider" of the Debtor in order to expand the recovery period to one year under §547(i) and reach the October 2011 Settlement Agreement, the related security interest, and the other $180,000 of payments that the Debtor made to Thomas between the settlement and his bankruptcy petition date. Similarly, to reach the $40,000 allegedly held by the Debtor's attorney, Sherron Associates must be able to invalidate the security agreement to establish that Thomas would not be entitled to receive those payments as a secured creditor. See § 547(b)(5) (fifth element of a preference claim is that the transfer enables a creditor to receive more than it would have in a chapter 7 liquidation).

Both Sherron Associates and Thomas have now filed cross motions for summary judgment as to whether Thomas is an "insider" of an "affiliate" of the Debtor, and therefore an insider as to the Debtor, as defined in § 101(2) & § 101(31). There is no dispute that Thomas is not an "insider" as to the Debtor under the definition of "insider" for an individual debtor found in § 101(31)(A)[7]. Instead, the road to Thomas being an insider runs through § 101(31)(E), where an insider of an affiliate of a debtor may be treated as an insider of the debtor.

---

[7] This definition includes "(i) relative of the debtor or of a general partner of the debtor; (ii) partnership in which the debtor is a general partner; (iii) general partner of the debtor; or (iv) corporation of which the debtor is a director, officer, or person in control."

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 6

A party seeking summary judgment bears the burden of demonstrating that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548 (1986). All inferences drawn from the evidence presented must be drawn in favor of the party opposing summary judgment, and all evidence must be viewed in the light most favorable to that party. Summary judgment should be granted if, after taking all reasonable inferences in the nonmoving party's favor, the court finds that no reasonable jury could find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505 (1986). The Ninth Circuit Court of Appeals (Ninth Circuit) has determined that "[i]n opposing summary judgment, a nonmoving party must go beyond the pleadings and, by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir. 2007) (internal quotation marks omitted); see also Estate of Tucker ex rel. Tucker v. Interscope Records, Inc., 515 F.3d 1019, 1033 n.14 (9th Cir. 2008). The nonmoving party must present significant probative evidence to support his or her allegations.

The parties' motions present multiple issues that the Court must determine. Initially, the Court must decide whether the "affiliate" and "insider" definitions in § 101(2) and 101(31) include limited liability companies (L.L.C.), similar to South Sound Property, when each definition only refers to "corporations." If L.L.C.s are not included in the insider or affiliate analysis, Thomas cannot be an insider.

Second, if L.L.C.s are included in corporations, can a liquidated, "defunct" L.L.C., i.e., South Sound Property, be an "affiliate" under § 101(31)(E)?

Third, if South Sound Property can be treated as an affiliate of the Debtor, is the determination of who is an insider of the affiliate then made using the "insider" definition for individuals under § 101(31)(A), which does not include relatives of a person in control, or for corporations under § 101(31)(B), which does include relatives of a person in control?

Fourth, if relatives of persons in control can be included, is Thomas a relative of a "person in control" when her brother, Weinand, has filed bankruptcy and allegedly has been dissociated from South Sound Property, pursuant to the South Sound Property L.L.C. agreement (L.L.C. Agreement) and Washington State law?

Fifth, if Thomas is not a per se, statutory insider based on the above, is she a "non-statutory" insider based on having some position of influence or control over the Debtor?

Sixth, if Thomas is a statutory or non-statutory insider, has Sherron Associates met its burden of proof on the other elements of its preference claim?

And last, has Sherron Associates established that there are issues of material fact as to Thomas's motion for summary judgment against its equitable subordination claim?

Initially, the parties have raised the issue as to whether an L.L.C. such as South Sound Property falls within the § 101(2) and (31) definitions of "affiliate" and "insider." Section 101(2)(B) defines "affiliate," in relevant part, as a "corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor . . . ." Section 101(31)(A)(iv) defines "insider" for an individual debtor, in relevant part, to "include[] . . . corporation of which the debtor is a director, officer, or person in control." While these definitions refer to corporations and not specifically to L.L.C.s, the definition of "corporation" in §101(9) indicates that that term is meant to encompass business entities beyond those whose names end in "Inc." or "Corp." In title 11, the term "corporation"

    (A)    includes—

        (i)    association having a power or privilege that a private corporation, but not an individual or partnership, possesses;

        (ii)    partnership association organized under a law that makes only the capital subscribed responsible for the debts of such association;

        (iii)    joint-stock company;

        (iv)    unincorporated company or association; or

        (v)    business trust; but

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 8

(B)    does not include limited partnership.

§ 101(9).

Applying general principles of statutory construction supports the inclusion of L.L.C.s within the definition of "corporation."  The court must begin "with the language of the statute itself."  <u>United States v. Ron Pair Enters., Inc.</u>, 489 U.S. 235, 241, 109 S. Ct. 1026 (1989).  In defining the word "corporation," §101(9) uses the term "includes."  In interpreting a statute, the use of the word "includes," is expansive, not limiting.  <u>Winterrowd v. David Freedman and Co., Inc.</u>, 724 F.2d 823, 825 (9th Cir. 1984) (citing <u>Highway & City Freight Drivers v. Gordon Transports, Inc.</u>, 576 F.2d 1285, 1289 (8th Cir. 1978)).  In <u>Highway & City Freight Drivers</u>, the Eighth Circuit Court of Appeals (Eighth Circuit) was asked to decide whether a labor union is a "person" who may file a petition for voluntary bankruptcy under the Bankruptcy Act.  <u>Highway & City Freight Drivers</u>, 576 F.2d at 1286.  In determining whether the term "corporation" included a labor union, the Eighth Circuit relied on the basic principle of statutory construction, that when a statute uses the word "includes" rather than "means" in defining a term, it does not imply that items not listed fall outside the definition.  <u>Highway & City Freight Drivers</u>, 576 F.2d at 1289.  The court noted that utilizing this principle "lend[ed] support to a broad construction of the definition of a corporation" under the Act.  <u>Highway & City Freight Drivers</u>, 576 F.2d at 1289.  Under this analysis, this Court is persuaded that "corporation" in § 101(9)(A) is not limited to those entities specifically itemized in the statute.

This approach is consistent with that taken by the Seventh Circuit Court of Appeals (Seventh Circuit) in <u>In re Longview Aluminum, L.L.C.</u>, 657 F.3d 507, 510 (7th Cir. 2011).  In that case, the Seventh Circuit held L.L.C.s to be equivalent to corporations in the insider context when it determined that a member of an L.L.C. was equivalent in relationship to a director of a corporation, thereby expanding the definition of "director" in § 101(31) to include other L.L.C. members.  The circuit court noted that the determination of insider status is a "case-by-case decision based on the totality of the circumstances."  <u>Longview Aluminum</u>, 657 F. 3d at 509.  Additionally, when the position of an alleged insider is not enumerated in the statute, "the relevant inquiry for the court to consider is whether the

relationship at issue is similar to or has characteristics of any of the defined relationships." Longview Aluminum, 657 F. 3d at 510. See also Kotoshirodo v. Zapara (In re Lull), No. 08-90074, 2009 WL 3853210, at *4 (Bankr. D. Haw. Nov. 17, 2009) (where bankruptcy court stated that "an LLC fits within the Code's definition of 'corporation' under § 101(9)(A)."). The Ninth Circuit Bankruptcy Appellate Panel reached the same conclusion in Village at Lakeridge, L.L.C. v. U.S. Bank Nat'l Assoc. (In re Village at Lakeridge, L.L.C.), No. NV-12-1456-PaKiTa, NV-12-1474-PaKiTa, 2013 WL 1397447, at *4 n.8 (9th Cir. BAP April 5, 2013), where it held that the definition of "corporation" in the Code includes unincorporated limited liability companies such as the debtor L.L.C.

In addition to the significance of word "includes," there is presumption that equivalent words have equivalent meaning when repeated in same statute. Cohen v. de la Cruz, 523 U.S. 213, 220, 118 S. Ct. 1212 (1998). Federal courts in non-insider contexts have found that an L.L.C. "fits comfortably within the Bankruptcy Code's definition of 'corporation.'" Gilliam v. Speier (In re KRSM Props., L.L.C.), 318 B.R. 712, 717 (9th Cir. BAP 2004) (where the court, considering whether an L.L.C. was a "person" for purposes of the Code and thus eligible to be a debtor, held that an L.L.C. fits within the definition of "corporation" as used in § 101(41)). Moreover, the term "corporations" appearing in other sections of the Code has been interpreted to include limited liability companies. See Fed. R. Bankr. P. 7007.1 advisory committee's note (regarding corporate disclosure statements, the identification of any "corporation," "includes listing membership interests in limited liability companies and similar entities that fall under the definition of 'corporation' in Bankruptcy Code §101").

While federal law controls the interpretation of the definitional statutes at issue, Washington State's treatment of L.L.C.s supports this Court's conclusion. See Highway & City Freight Drivers, 576 F.2d at 1288 n.2 (rejecting application of state law and holding that "[f]ederal law clearly controls the interpretation of federal statutes"). Washington State courts have recognized that a "limited liability company is a statutory business structure that is like a corporation in that members of the company are generally not personally liable for the debts or obligations of the company," although it can be similar to a partnership for tax purposes. Chadwick Farms Owners Ass'n v. FHC, L.L.C., 166 Wn. 2d

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 10

178, 186-87, 207 P. 3d 1251 (2009).  See also RCW 25.15.125 (generally members of an L.L.C. are not personally liable for the L.L.C.'s debts, obligations or liabilities, with listed exceptions).  As such, in Washington, an L.L.C. has "a power or privilege" that an individual or partnership does not have, and is in line with the federal definition of a corporation contained in § 101(9)(A)(i).

There are a few cases, as noted by Thomas, that apply a strict construction of the terms in the definitional section to exclude other business entities from the definition of "corporation."  See, e.g, Enter. Acquisition Partners, Inc. v. Miller Ave. Prof'l and Promotional Servs., Inc. (In re Enter. Acquisition Partners, Inc)., 319 B.R. 626, 632 (9th Cir. BAP 2004); Elsaesser v. Cougar Crest Lodge, L.L.C. (In re Weddle), 353 B.R. 892, 897 (Bankr. D. Idaho 2006).  This Court finds, however, that the Seventh Circuit's Longview Aluminum approach to consider whether the roles of the relative parties are similar to those defined in the statutes is the correct one.  Here, the Court is considering the use of "corporation" as used in the "affiliate" portion of the insider statute.  § 101(31)(E) (affiliates are insiders); § 101(2) (affiliates include any corporation in which debtor owns, controls or holds power to vote at least 20 percent of the interests).  The court in Weddle was considering just the list of "insiders" in the individual debtor definition under § 101(31)(A) and never analyzed the definition of "corporation."[8]  The Idaho court applied a strict construction of the statute, based on Enterprise Acquisition Partners, and merely found that an L.L.C. was not an insider to the Debtors under § 101(31)(A) because L.L.C.s were not listed in the definition.  The Enterprise Acquisition Partners case, however, is not controlling as it only limited the application of insiders to conclude that a wholly owned subsidiary of an insider to the debtor was not automatically an insider itself.  It held that the bankruptcy court's equation of an insider and her professional corporation was an "expansion of the list of per se insiders [that] . . . cannot be justified by the language of the statue."  Enter. Acquisition

---

[8] The L.L.C. at issue in Weddle was only 10% owned by the debtors, and 90% owned by one of their fathers who was designated as the sole manager.  Thus the L.L.C. was precluded from being an affiliate of the debtors based on the portion owned being less than 20%.  It also raised questions about whether the debtors could be considered "persons in control" of the L.L.C. sufficient to make it an insider even if had been found to be a "corporation" under 101(31)(A).  Weddle, 353 B.R. at 895.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 11

_Partners._ 319 B.R. at 632. <u>Enterprise Acquisition Partners</u> also did not consider whether an L.L.C. fell within the "corporation" definition and specifically noted it was not interpreting the "affiliate" portion of the "insider" statute. <u>Enter. Acquisition Partners,</u> 319 B.R. at 633.

Thus, the Court holds that an L.L.C. can be an "affiliate" of a debtor because L.L.C.s fall within the "corporation" definition of § 101(9), and an "affiliate" can include any L.L.C. in which a debtor owns, controls or holds the power to vote 20 percent or more of the interests. The Debtor held 33% of the interests in South Sound Property at all times relevant hereto. Accordingly, the Court holds that South Sound Property is an "affiliate" of the Debtor for purposes of § 101(31)(E) as of October 2011, the time of the transfers at issue. Sherron Associates' motion for summary judgment is granted as to this issue.

Thomas also questioned whether South Sound Property could be an affiliate of the Debtor given that it was "defunct" and all its assets had been liquidated in the receivership. However, Thomas admitted at the hearing that the "insider" and "affiliate" statutes do not place any sort of ongoing operational status on an L.L.C. or corporation. Moreover, the record indicates that Weinand filed a renewal and annual report for the L.L.C. in August 2011. The Debtor testified that he considered the L.L.C. an ongoing entity throughout 2011 because, while it had little market value, it had usefulness for tax purposes as there were losses that could be attributed to the members. The record also indicates that from the Washington Secretary of State's website, South Sound Property did not expire until August 2012, or become inactive until December 2012.

Dissolution does not terminate the L.L.C.'s existence, but begins a period in which the company affairs must be wound up. <u>See</u> <u>Chadwick</u>, 166 Wn.2d at 188. An L.L.C. remains an existing entity even during the winding up period, throughout which an L.L.C. is capable of prosecuting or defending claims. <u>Chadwick</u>, 166 Wn. 2d at 188. When South Sound Property failed to file its renewal in August 2012, that inaction commenced administrative dissolution under RCW 25.15.285, and the L.L.C. was deemed inactive in December 2012. But at the time of the October 2011

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 12

settlement with Thomas, the Court concludes that South Sound Property was an active L.L.C. that can be an "affiliate" of the Debtor. Thomas's motion for summary judgment is denied as to this issue.

Having concluded that South Sound Property is an affiliate of the Debtor, the question then is whether Thomas is an insider of that affiliate such that she can be held to be an insider of the Debtor. The Court concludes that, based on the plain language of the "insider" statute, she is an insider.

Although the issue of insider status is generally a question of fact, to the extent the underlying facts are undisputed the court may rule on the determination on a motion for summary judgment. See Miller v. Schuman (In re Schuman), 81 B.R. 583, 586 n.1 (9th Cir. BAP 1987). In this case, the facts are undisputed. The Debtor held 33% of South Sound Property, making by definition South Sound Property his affiliate pursuant to § 101(2)(B) and in turn an "insider" pursuant to § 101(31)(E). Section 101(31)(E) also deems an "insider of an affiliate" to be an insider "as if such affiliate were the debtor." It is undisputed that the other member of South Sound Property was Michael Weinand, who has a 67% ownership, and that Thomas is his sister. Thomas as a relative of a "director, officer, or person in control" of South Sound Property, is presumptively an insider of South Sound Property (subject to Weinand retaining a position with the L.L.C., as discussed further below). See § 101(31)(B)(iv). Accordingly, as in insider of the Debtor's affiliate South Sounder Property, Thomas is an insider of the Debtor. See § 101(31)(E).

The determination of statutory insiders does not depend on actual control or the actual relationship of the alleged insider and the debtor. See Sticka v. Anderson (In re Anderson), 165 B.R. 482, 485 (Bankr. D. Or. 1994); Kroh Bros. Dev. Co. v. United Missouri Bank of Kansas City (In re Kroh Bros. Dev. Co.), 137 B.R. 332, 334-35 (W.D. Mo. 1992) (establishing control is not necessary to qualify as per se statutory insider); Angell v. First Eastern, L.L.C. (In re Caremerica, Inc.), 2011 WL 1457223, No. 08-00157-8-JRL, at *5 (Bankr. E.D. N.C. April 15, 2011) (finding a transferee was a potential insider based on the statutory language as to affiliates, where it appeared that more than 20 percent of the corporation was held by individual who also owned an affiliate of the debtor, even though there was no evidence that the transferee had any control over payments made to it by the

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 13

debtor). Thus even if, as testified, Thomas had never met the Debtor at the time of the October 2011 settlement, she can still be his insider. Once a transferee falls within a statutory definition of insider, the inquiry ends. Venn v. Parcell (In re Winn), 127 B.R. 697, 699 (Bankr. N.D. Fla. 1991); see also Zakroff v. Markson (In re Ribcke), 64 B.R. 663, 666 (Bankr. D. Md. 1986) ("the statutory definition [of insiders] may be expanded by a factual presentation but never contracted."). Having determined that Thomas is an insider of the affiliate South Sound Property, Thomas is presumptively an insider of the Debtor pursuant to § 101(31)(E).

Thomas argued that because the Debtor is an individual, the determination of who is an insider of the Debtor's affiliate should be made using the individual debtor test set forth in § 101(31)(A). Yet this approach it is inconsistent with cases that have analyzed § 101(31)(E), which have applied the insider test under § 101(31) based on the nature of the affiliate, not the debtor. See Butler v. David Shaw, Inc. (In re Ed Tatum Motors, Inc.), 72 F.3d 437, 441 (4th Cir. 1996) (where the Fourth Circuit Court of Appeals applied individual debtor test under § 101(31)(A) to determine the insiders of an individual affiliate of the corporate debtor, for purposes § 101(31)(E)); Kroh Bros. Dev. Co., 137 B.R. at 335 (where insiders of the individual affiliate of the debtor corporation were determined by applying the individual debtor test under 101(31)(A), for purposes of 101(31)(E); Lull, No., 08-90074, 2009 WL 3853210 at *4 (where the bankruptcy court determined an individual was insider of an individual debtor because she owned 50% of their joint L.L.C., making her a "person in control" of the affiliate L.L.C., thus applying the corporate debtor test for purposes of § 101(31)(E)).

Thomas further argued that even if she could be an insider of the Debtor through South Sound Property, she cannot be an insider in this instance because that requires that she be a relative of a "person in control" of the affiliate.[9] Thomas argues her relative Michael Weinand was no longer in control of South Sound Property in October 2011 because he had been dissociated as a member of

---

[9] There has been no discussion as to whether Weinand may hold a position equivalent to officer or director of South Sound Property. Cf. Longview Aluminum, 657 F. 3d at 510 (holding L.L.C. member was equivalent to officer or director).

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 14

the L.L.C. under Washington law upon the filing of his own bankruptcy in January 2011, retaining only an economic interest but no longer being able to manage or control the L.L.C..

RCW 25.15.130(1)(d) provides that a person ceases to be a member of an L.L.C. when he or she file for bankruptcy, unless the L.L.C. agreement provides otherwise. Article 14 of the L.L.C. Agreement provides that the company shall dissolve upon any person ceasing to be a member by one of the events specified in RCW 25.15.130, unless the company is continued with the consent of the remaining members.

Sherron Associates has argued that Weinand's interests in South Sound Property passed through his bankruptcy unmodified and were abandoned back to him upon closure of the bankruptcy case in April 2011; that the L.L.C. continued to operate; and that Weinand filed the certificate of renewal in August 2011. According to Sherron Associates, these events collectively indicate that the other members of South Sound Property (i.e., the Debtor) waived Weinand's dissociation, and Weinand remained an active member and a person in charge of South Sound Property as of October 2011. Thomas has argued, however, that the dissociation cannot be waived. Rather Article 14 of the L.L.C. Agreement allows only waiver of the dissolution of the company, which was done, but Weinand ceased to have control of his interests with his bankruptcy filing, retaining only an economic interest in the L.L.C. after January 2011.

Under § 541(a)(1), property of the estate is defined as "all legal or equitable interests of the debtor in property as of the commencement of the case." While federal law defines "property of the estate," state law determines the nature and extent of a debtor's interest in property. Butner v. United States, 440 U.S. 48, 54-55, 99 S. Ct. 914 (1979). In this case, absent language in the L.L.C. Agreement to the contrary, RCW 25.15.130(1)(d) terminates a member's interest in an L.L.C. when he or she files for bankruptcy. While the parties disagree as to whether the saving language in Article 14 of the L.L.C. Agreement applies to a member or just the company, the Court need decide the issue.

"Code § 541(c)(1) expressly provides that an interest of the debtor becomes property of the estate notwithstanding any agreement or applicable law that would otherwise restrict or condition

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 15

transfer of such interest by the debtor." <u>Movitz v. Fiesta Invs., L.L.C. (In re Ehmann)</u>, 319 B.R. 200, 206 (Bankr. D. Ariz. 2005); <u>see also</u> <u>Fursman v. Ulrich (In re First Protection, Inc.)</u>, 440 B.R. 821, 830 (9th Cir. BAP 2010). There is no dispute that Weinand's interest in South Sound Property, which was listed in Schedule B, became property of his bankruptcy estate upon commencement of his case. The chapter 7 trustee in the Weinand bankruptcy acquired all of the rights that Weinand had in South Sound Property upon his bankruptcy filing, including his management rights. <u>See</u> <u>First Protection</u>, 440 B.R. at 830 (where the Ninth Circuit Bankruptcy Appellate Panel held that a trustee's rights acquired in a debtor-owned L.L.C. under § 541(a) included the debtor's rights to control the entity). Since the trustee in Weinand's bankruptcy did not administer Weinand's interest in the L.L.C., the estate's interests in South Sound Property, including both economic and management rights, were abandoned to debtor Weinand when the case was closed April 25, 2011, pursuant to § 554(c).

Having so concluded, the Court does not need to resolve whether the other member of South Sound Property, the Debtor, waived the dissociation of Weinand. Moreover, while South Sound Property is a multi-member L.L.C., it is unnecessary for this Court to examine the L.L.C. under § 365, as it was not scheduled as an executory contract in the Weinand bankruptcy, and no one has argued it was an executory contract at the time of the Weinand bankruptcy in accordance with the <u>Catapult</u> test. <u>In re Catapult Entm't, Inc.</u>, 165 F.3d 747, 754-55 (9th Cir. 1999). The Court denies Thomas's motion for summary judgment as to this issue.

Thomas also seeks a summary judgment ruling that she was not a non-statutory insider at the time of the transfers based on the possibility that Sherron Associates' complaint asserts she was a non-statutory insider. While this issue may be moot due to the Court's finding that Thomas is a statutory insider, the Court nonetheless concludes that based on the record before it, Thomas would not be a non-statutory insider.

Section 101(31)'s definition of "insiders" begins with the phrase "includes" and, as previously mentioned, courts have widely agreed that Congress did not intend to limit the classification of insiders to those listed in the statutory definition. <u>Schuman</u>, 81 B.R. at 586. A non-statutory insider is one

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 16

"who has a sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor." Friedman v. Sheila Plotsky Brokers, Inc. (In re Friedman), 126 B.R. 63, 70 (9th Cir. BAP 1991) (quoting H.R. Rep. No. 95-595, 95th Cong., 2d Sess. 312 (1977) reprinted in 1978 U.S. Code Cong. & Ad. News 5787, 6269). To determine whether a creditor is a non-statutory insider, courts look at the closeness of the parties and the degree to which the creditor is able to exert control or influence over the debtor. Enter. Acquisition Partners, 319 B.R. at 633 n.5.

In this case, Sherron Associates' theory is that Thomas exerted actual and significant control over the Debtor during the settlement negotiation process. She was able to exert this control because Weinand, an authorized agent of Thomas's (given his financial advisor relationship to his sister), was instrumental in negotiating with the Debtor a favorable settlement for his sister. Thomas also had the benefit of inside information from Weinand, which enabled her to put pressure on the Debtor during the settlement. As discussed below, this theory is not supported by the record.

There is no dispute that Weinand and Thomas are brother and sister and had a close relationship through both their consanguinity and professional association. But Sherron Associates has the burden on summary judgment to come forward with affirmative evidence and set forth specific facts showing that there is a genuine issue for trial. It has not done so. It cites only to the deposition transcripts of Thomas and her husband, both of which state that the Thomases never met the Debtor before this adversary was filed, and neither had much discussion with Weinand about the Debtor. Sherron Assoc. Summ. J., ECF No. 41, Ex. 34, 35 (39:22-40:6, Jeff Thomas talked to Weinand a couple times on the phone, "you know, just tell me about this guy."). Additionally, there is no evidence that Weinand was involved in either the decision to sue the Debtor or the settlement discussions themselves.

In fact, the record indicates that the Thomases consulted with their own counsel and made an independent decision to bring suit against the Debtor (but not Weinand because he was in bankruptcy), while the Debtor initiated the settlement discussions and eventually involved his counsel

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 17

in the final resolution. Sherron Associates obtained a declaration from the Debtor, but the Debtor testifies only about South Sound Property's status in 2011 and a tax issue; there is no evidence about the settlement discussions, or specifically that the Debtor felt he was being pressured to settle or there was insider knowledge being used in the discussions.

In summary, there is no affirmative evidence that Weinand played any role in the settlement discussions between the Debtor and Thomas; no evidence that Thomas (via Weinand or directly) exerted any control or influence over the Debtor; and no evidence that the settlement between Thomas and the Debtor was anything other than an arm's length transaction. Sherron Associates' response brief even notes that there can only be a "reasonable inference" that supports its theory. Accordingly, Sherron Associates has failed to raise a genuine dispute as to any material fact, and the Court finds that Thomas is not a non-statutory insider.

Having found Thomas is an insider, the Court, however, declines to grant complete summary judgment on Plaintiff's claims as it concludes there are questions of fact about the remaining elements of Sherron Associates' preference claim under § 547(b) and its fraudulent transfer claim under § 548.

A transfer is avoidable as a preference if it: (1) is to or for the benefit of a creditor; (2) is for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) is made while the debtor was insolvent; (4) is made on or within 90 days before the date of the filing of the petition (or one year before, in the case of insiders); and (5) enables such creditor to receive more than such creditor would receive if the transfer had not been made. § 547(b)(1) – (5). The first two elements are not disputed, but Thomas has disputed whether the Debtor was insolvent in October 2011, which is outside the presumptive period of insolvency under § 547(f), and that she received more than she would have if the transfer had not been made. Sherron Associates' response to these points is that the Debtor was insolvent when he filed bankruptcy based on the judgment in favor of Sherron Associates, and nothing had changed in his condition from October 2011 to the June 2012 petition date. It also points to the Debtor's Disclosure Statement filed in the main case, which estimates a $42,000 to $132,000 liquidation value for the Debtor's assets. In re Parks, 12-44011, ECF

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 18

No. 60. This statement, however, has not been supported by evidence and is also based on a presumption that Thomas is secured in all of the Debtor's Penser stock due to the Stock Pledge supporting the Settlement Agreement. The Court finds that the record has not been fully developed as to either the Debtor's insolvency or the liquidation value of the Debtor's estate, and denies summary judgment as to these issues.

The fraudulent transfer claim requires a showing of actual intent to hinder, delay or defraud creditors, or was made without receiving reasonably equivalent value in exchange. See § 548; see also RCW 19.40.041. One of the statutory elements that can indicate an intent to hinder or delay is a transfer to an insider, but other circumstances may indicate intent as well. The Court similarly holds that there has not been full development of the record as to this claim, and denies summary judgment as to it as well.

Sherron Associates rightfully recognized at the summary judgment hearing that its request to equitably subordinate Thomas's claim is its weakest argument. The theory appears to be that Thomas acted inequitably in the timing of the settlement, right after the Sherron Associates' judgment was entered and her brother was discharged from all liability in his bankruptcy, and that she acted inequitably by getting insider information from her brother Weinand about the Debtor to force the settlement. There is little in the record, other than perhaps an inference, to support this theory.

To establish equitable subordination, the movant must show: "(1) the claimant who is to be subordinated has engaged in inequitable conduct; (2) the misconduct resulted in injury to competing claimants or an unfair advantage to the claimant to be subordinated; and (3) subordination is not inconsistent with bankruptcy law." Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.), 163 F. 3d 570, 583 (9th Cir. 1998) (internal quotation marks omitted); see Friedman, 126 B.R. at 71-72 (where the claimant is not an insider, the objecting party must prove "gross misconduct tantamount to fraud, overreaching or spoliation to the detriment of others.") (internal quotation marks omitted). Summary judgment was the time for Sherron Associates to have come forward with the evidence it would present at trial to establish inequitable conduct or gross misconduct, and the Court

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 19

does not find any such evidence here that would justify the equitable subordination claim surviving summary judgment. Thomas may have received a better deal in settlement than Sherron Associates was able to achieve with its own lawsuit, but it does not rise to the level of inequitable conduct or gross misconduct. The Court grants Thomas's summary judgment motion as to the equitable subordination claim.

Thomas included in her summary judgment motion a request for attorneys' fees based on a provision in the October 2011 Settlement Agreement and related Stock Pledge Agreement (collectively Agreements) for attorneys' fees in the event of any action over the terms of the Agreements. Sherron Associates has opposed the request for fees on the ground it is not a party to the Agreements, although it has brought this suit derivatively on behalf of the Debtor who is a party.

The Court notes that both sides have prevailed in part on their respective summary judgment motions and also had their motions denied in part. It is not clear that either side is entitled to attorneys' fees, and the Court orders that any request for fees or costs must be brought by separate motion.

Accordingly, it is hereby

**ORDERED** that Sherron Associates' Summary Judgment Motion is granted in part: the definitions of "affiliate" in § 101(2) and "insider" in § 101(31) include limited liability corporations wherever the term "corporation" is used; South Sound Property is an affiliate of the Debtor as it was active at the time of the transfers; and Thomas is a statutory insider of South Sound Property, making Thomas an insider of an insider as to the Debtor and expanding the preference period back to one year; it is further

**ORDERED** that Sherron Associates' Summary Judgment Motion is denied as to the other elements of the preference and fraudulent transfer claims; it is further

**ORDERED** that Thomas's Summary Judgment Motion is granted in part: Thomas is not a non-statutory insider, and Sherron Associates' equitable subordination claim fails as a matter of law; it is further

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT - 20

**ORDERED** that Thomas's Summary Judgment Motion is denied as to her contention that Weinand was dissociated as a member of the South Sound Property, thus not a "person in control," and as to the remaining elements of Sherron Associates' preference and fraudulent transfer claims; it is further

**ORDERED** that all requests for attorneys' fees must be filed by separate motion at the conclusion of the case.

///End of Order///